**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-10520
(Summary Calendar)

ARTHUR A. COLLINS, INC.,

Plaintiff-Appellant,

versus

AMERICAN TELEPHONE AND TELEGRAPH
COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-2842)

November 15, 1996

Before WIENER, PARKER and DENNIS, Circuit Judges.

<u>OPINION ON REHEARING REGARDING SANCTIONS</u>

WIENER, Circuit Judge:[*]

In our original opinion, we assessed sanctions against

Plaintiff-Appellant Arthur A. Collins, Inc. (Collins) for filing

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

and prosecuting a frivolous appeal. We did not specify that our sanctions were levied under Federal Rule of Appellate Procedure 38, but Collins assumed that we had and claimed that adequate notice and opportunity to respond, as provided for under that Rule, had not been given. Out of an abundance of concern, we scheduled and subsequently held a "show cause" hearing at which Collins' CEO was present together with counsel who had represented Collins in this and prior litigation. Also present were Louisiana counsel retained by Collins for purposes of the show cause hearing, and counsel for Defendant-Appellee American Telephone and Telegraph Company (AT&T). Our show cause hearing and the pleadings and exhibits filed in connection therewith have convinced us that sanctions were providently assessed, albeit in an amount that we now determine to have been inadequate and are therefore increased. Finding the activities of Collins and its counsel to have been not merely frivolous and unmeritorious, but objectively vexatious and harassing as well, we let stand the sanctions heretofore assessed but augment the quantum thereof as hereafter specified.

I

FACTS AND PROCEEDINGS

A.   Collins I

In December 1990, Collins filed a patent infringement suit against AT&T in the district court for the Western District of Texas (Collins I). Collins obtained a favorable jury verdict, and the court awarded a judgment exceeding $34 million.

2

As that case involved issues of patent law, AT&T appealed to the Federal Circuit, which exercises exclusive appellate jurisdiction over patent disputes. The Federal Circuit reversed, holding that Collins' patent was invalid, and overturning the jury award. The court rested its holding on two alternative legal determinations: (1) A "prior art" article written by Guido Granello (the Granello Article) had anticipated Collins' patent, and (2) the patent was invalid as "obvious" in light of two additional prior art articles ("Mack & Patrusky" and the "Final Technical Report").[1]

Collins filed motions for rehearing and for rehearing en banc before the Federal Circuit, claiming that AT&T had fraudulently misled the court into misinterpreting the technical data presented in the Granello Article. In obvious disagreement with, inter alia, Collins' attempt to characterize AT&T's legal and factual arguments as "fraud on the court," the Federal Circuit denied Collins' motions for panel and en banc rehearings.

Collins then sought a writ of certiorari from the Supreme Court, but it denied Collins' application for writs. This was in May 1994. At that juncture Collins had reached the point at which even the most aggressive reasonable litigant should have accepted the finality of an adverse result. But Collins pressed on.

---

[1] Collins has never taken issue with the Federal Circuit's alternative holding that Mack & Patrusky and the Final Technical Report rendered Collins' patent invalid as obvious.

3

B.    Collins II  - "A Rose by Any Other Name . . . ."[2]

Collins elected to continue its assault on AT&T's citadel, but did so obliquely.  Forsaking the Western District of Texas for the Northern District, Collins filed a suit that it creatively characterized as a state-law tort claim (Collins II).  When reduced to its essentials, however, that second action was purely and simply a collateral attack on the Federal Circuit's mandate in Collins I.  The principal thrust of the pleadings in Collins II was not that the fraud was perpetrated on Collins, the plaintiff, but on the Federal Circuit court itself.  Even so, the amount of damages that Collins sought for itself for this purportedly tortious act of fraud on the appellate court was, not so coincidentally, essentially the same sum it had "lost" when the Federal Circuit reversed Collins' patent infringement judgment from the Western District of Texas.

The district court for the Northern District of Texas apparently had no difficulty in seeing through Collins' ruse.  The court ruled that it lacked subject matter jurisdiction to hear such a collateral attack on the Federal Circuit's mandate, absent leave from that court to do so.  Then, assuming arguendo that it did have jurisdiction over the case, the district court ruled in the alternative that Collins II was barred by collateral estoppel.  Although the court then dismissed the case, it did so "without

_____

    [2]    William Shakespeare, Romeo and Juliet, act 2, sc. 2.

4

prejudice" so as to preserve for Collins the opportunity to do what it should have done in the first place (if it were not willing to throw in the towel after the Supreme Court denied writs), i.e., to entreat the Federal Circuit to set aside its own mandate and grant leave to Collins to bring an action in district court.

But Collins both ignored the district court's implicit invitation to return to the Federal Circuit for such orders and opted not to drop the matter altogether in light of the district court's unassailable ferreting out of the true nature of Collins' bogus tort suit. It chose instead to file the instant appeal directly with us, ostensibly seeking reversal of both of the district court's alternative holdings. Like the district court before us, though, we had no difficulty in concluding that <u>Collins II</u> was indeed a "wolf in sheep's clothing," and affirmed the judgment of the district court. In addition, though, we imposed sanctions against Collins for taking a frivolous appeal. As Collins had not been given notice and an opportunity to respond, however, we granted its request for such an opportunity by ordering a "show cause" hearing — which was ultimately conducted by this writer on behalf of the panel — so that all of the panel members could reconsider the imposition of sanctions vel non and the type and quantum if imposed.

II

ANALYSIS

A.    <u>Standard for the Imposition of Sanctions</u>

5

Attorneys and litigants are afforded a "broad umbrella" of protection against the imposition of sanctions for arguing novel or aggressive legal positions, as long as any such position is arguably supported by existing law or by any reasonably based suggestion for its extension, modification, or reversal.[3] On the other hand, sanctions can and should be imposed against litigants who burden our limited judicial resources and the financial resources of their opponents with frivolous appeals. An appeal is frivolous if the claim advanced is unreasonable or not brought with a reasonably good faith belief that it is justified.[4] We hasten to add, in light of the protestations of Collins' counsel, that the test is an objective one: "Ill purpose is in no way a necessary element for imposition of sanctions under Rule 38."[5]

In like manner, sanctions may be levied against an attorney pursuant to § 1927. As this court has previously noted, bad faith is not a necessary element for the imposition of such a sanction:

> While the language of § 1927 suggests deliberate misbehavior, <u>subjective bad faith is not necessary</u>; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim.[6]

---

[3] <u>Farguson v. Mbank Houston, N.A.</u>, 808 F.2d 358, 359 (5th Cir. 1986).

[4] <u>Clark v. Green</u>, 814 F.2d 221, 223 (5th Cir. 1987); <u>Stelly v. Commissioner</u>, 761 F.2d 1113, 1116 (5th Cir. 1985).

[5] <u>Coghlan v. Starkey</u>, 852 F.2d 806, 808 (5th Cir. 1988).

[6] <u>Id.</u> at 814, <u>quoting</u> <u>Reliance Ins. Co. v. Sweeney Corp.</u>, 792 F.2d 1137, 1138 (D.C. Cir. 1986). (emphasis added).

We need not concern ourselves with the standard for imposing sanctions under § 1927, however, because the attorneys for Collins have stipulated in open court that if we remain convinced that sanctions are appropriate, we should render them jointly and severally against both Collins and its attorneys, and the latter will indemnify their client. Certainly, an attorney may voluntarily assume a client's obligation to pay sanctions that have been assessed for a frivolous appeal.[7]

B.   Collateral Estoppel

1.   A Fifth Bite at the Apple

Collins notes in its brief that the primary basis articulated in our original opinion for imposing sanctions was that Collins had already had "four bites at the apple" on its fraud claims, making those claims clearly subject to collateral estoppel. Collins contends that collateral estoppel does not apply, and that its appeal cannot be characterized as frivolous, because Collins has not yet received a "full and fair opportunity" to litigate its fraud claim. Collins argues that AT&T did not commit the "fraud" of which Collins complains until Collins I was on appeal before the Federal Circuit, and that, because Collins was caught off guard, it was unable to expose AT&T's wrongdoing to that court on appeal. Furthermore, Collins notes that no precedential authority attaches to the denials of its motions to the Federal Circuit for panel

---

[7]   Coghlan, 852 F.2d at 818 n. 23.

7

rehearing or for rehearing en banc, or to the refusal by the Supreme Court to grant certiorari. Therefore, contends Collins, it has not yet received even one of what it has termed "the phantom four bites at the apple."

Indeed, Collins continues passionately and self-righteously to insist that the merits of its fraud claim have yet to be heard, and that both the district court and this court erred in determining that its fraud claim has been finally decided. But, as discerned correctly by the district court, Collins' so-called "fraud claim" is not a new and different claim at all. Even granting to Collins the full benefit of the doubt with regard to its fervently declared subjective belief in the validity and separateness of the claim, Collins cannot make the proverbial silk purse out of this sow's ear: The mis-labeled tort suit is truly nothing but an attempt to re-assert that the Federal Circuit incorrectly interpreted the Granello Article as a matter of law. Notwithstanding Collins' attempt to shift the focus away from the Federal Circuit's decision and onto the purported impropriety of AT&T's representation to that court regarding the Granello Article, there is not and there could not have been a separate fraud claim of that stripe. More importantly, it was and remains patently unreasonable for Collins genuinely to believe otherwise.

The invalidity of Collins' patent was decided with finality in

<u>Collins I</u>,[8] in which Collins had a full and fair <u>opportunity</u> to argue in support of its interpretation — and in opposition to AT&T's supposedly fraudulent and erroneous characterization of the Granello Article to the Federal Circuit. AT&T advanced its argument concerning the Granello Article in its brief to the Federal Circuit, so Collins had more than ample opportunity to prepare and articulate a counterargument, either in its reply brief or during oral argument. Additionally, the Patent Office had recently invalidated Collins' patent on the basis of the same argument made to it by AT&T that AT&T was making to the Federal Circuit.[9] Collins has only itself to blame for failing to take issue with AT&T's arguments, particularly the characterization of the Granello Article, until after the Federal Circuit issued its opinion. That Collins failed fully to advocate its position before the Federal Circuit does not give rise to a subsequent fraud claim against AT&T.

---

[8] The Federal Circuit invalidated Collins' patent based on two alternative legal determinations: that the Granello Article is anticipatory prior art, <u>and</u> that the patent was obvious in light of two additional prior art articles with which Collins has never taken issue. <u>See</u> <u>Collins Licensing, L.P. v. American Tel. & Tel. Co.</u>, 11 F.3d 1072, <u>reported in full at</u> 28 U.S.P.Q.2d (BNA) 1847 (Fed. Cir. 1993).

[9] We are fully aware, as was the Federal Circuit, that the Patent Office subsequently found on rehearing that the patent was valid. Nevertheless, given the initial effectiveness of AT&T's arguments to the Patent Office and the fact that AT&T presented the same argument to the Federal Circuit in its appellate brief, Collins could have and should have attempted to dispel AT&T's purportedly erroneous characterization of the Granello Article to the Federal Circuit.

9

Furthermore, Collins did fully articulate a counterargument to AT&T's interpretation of the Granello Article in its motion for rehearing. As this court has noted previously under analogous circumstances, when "[t]he argument . . . before [a subsequent panel] was before the original panel, that panel must be presumed to have considered it on motion for rehearing."[10] The fact that the Federal Circuit refused to permit Collins to append new expert affidavits supporting Collins' explanation of the court's error is of no consequence.

Once Collins' motion for rehearing and suggestion for rehearing en banc were denied by the Federal Circuit and its application for a writ of certiorari was denied by the Supreme Court, the case was over. This finality applied to all issues of fact and law that were raised or could have been raised, including the allegedly fraudulent argument made by AT&T to the Federal Circuit. We are satisfied that the Federal Circuit was perfectly capable of recognizing the difference between an attempt to commit fraud on the court and mere differences between the litigants' respective positions as to the proper interpretation of a highly technical learned treatise and the legal effects thereof. Thus, as made clear by the district court, the only avenue remaining open to

---

[10] Fine v. Bellefonte Underwriters Ins. Co., 758 F.2d 50, 53 (5th Cir. 1985) (holding that the original panel's misstatement of the legal elements of an established cause of action had become law of the case and therefore could not be revisited when the appellant had filed a motion for rehearing in which it pointed out the panel's error, but the motion was denied).

Collins was by way of a Rule 60(b) motion to set aside the mandate — assuming that some articulable reason existed for doing so.

2.   <u>A "Reasonable" Argument for the Extension of Existing Law?</u>

Collins next argues that an "unreversed line" of three Supreme Court cases provided reasonable support for its tort suit.[11] We not only disagree; we find that argument to be sophistry at best. First, the line of cases Collins refers to establishes a basis for equitable review of a final judgment, not for collaterally attacking such a judgment by characterizing the challenge as an independent state-law tort claim.   More importantly, however, <u>Johnson</u>, <u>Arrowsmith</u>, and <u>Marshall</u> all predate the creation of Rule 60, which now governs the type of review envisioned by those cases but which Collins has studiously avoided.  If anything, those cases should have made clear to Collins that its only appropriate recourse was to seek some sort of equitable review.  Then, even minimal additional research should have lead Collins to the realization that equitable review of final judgments is now governed exclusively by Rule 60.

Collins further argues that <u>Bros Inc. v. W.E. Grace Manufacturing Co.</u>, 320 F.2d 594 (5th Cir. 1963), established Fifth Circuit precedent for the proposition that independent relief is available against a wrongdoer without attacking the final judgment

---

[11]   <u>Arrowsmith v. Gleason</u>, 129 U.S. 86, 98, 95 S. Ct. 237, 32 L. Ed. 630 (1889); <u>Marshall v. Holmes</u>, 141 U.S. 589, 599-600, 12 S. Ct. 62, 35 L. Ed. 870 (1891); <u>Johnson v. Waters</u>, 111 U.S. 640, 647, 45 S. Ct. 619, 28 L.Ed. 547 (1884).

as having been improperly obtained.  Collins' reading of <u>Bros Inc.</u> is specious to say the least.  For openers, that case was decided before the creation of the Federal Circuit, which now exercises exclusive appellate jurisdiction over patent disputes.  Before that centralization of appeals of patent disputes, it was not uncommon for patents to be held invalid in one circuit but valid in another. This court in <u>Bros Inc.</u> did not offer relief without attacking an appellate mandate as Collins strains to argue; rather, the <u>Bros Inc.</u> panel recognized that it could do nothing to alter an incorrect result reached by the 6th Circuit.  In <u>Bros Inc.</u> we provided only limited relief by setting aside our <u>own</u> mandate and remanding to the district court to determine whether the patent should be validated within the 5th Circuit; and we did so by way of a Rule 60 motion![12]  So, once again, any bona fide reading of the authority cited by Collins clearly undermines its theory and further convinces this court of the unreasonableness —— and thus the frivolousness —— of Collins' appeal.

Collins seeks to assure this court that it has great respect for the policies favoring repose and the finality of judgments, insisting, however, that it had no choice in this instance but to bring the underlying tort suit under the competing "maxim that where there is a wrong there is a remedy."  But Collins also readily concedes that "[Rule] 60(b) would give [us] a remedy, your

---

[12]  <u>Bros Inc.</u>, 320 F.2d at 607-608.

12

Honor. We don't dispute that." Collins is speaking out of both sides of its mouth: It posits that "you have to always balance repose against the desire to see that justice is done," yet, when asked why it chose not to seek to have justice done by way of a Rule 60 motion, Collins admitted in a rare moment of candor that it had hoped to recover punitive damages by bringing a state-law based tort action. This faux "balancing act" purportedly undertaken by Collins troubles us deeply.

Its crocodile tears to the contrary notwithstanding, Collins' appeal to this court was, indeed, an attempt to purloin yet another bite at the same apple previously masticated; whether it was the fifth or merely the third or fourth is quibbling. We find it to be at least unreasonable to belabor the argument that Collins held a new and unbitten "fraud" apple in its hand.

We are thus more satisfied than ever that this appeal is one for which the imposition of sanctions is particularly appropriate: It reeks of anger, bitterness, and spite, all of which Collins disingenuously tries to legitimate by wrapping itself in the mantel of zealous but permissible advocacy. But, like the glass slipper that would not accommodate Cinderella's stepsisters' feet, that mantel will not fit Collins no matter how it may wriggle to squeeze into it. We are generally chary about imposing sanctions lest we chill aggressive advocacy, which lies at the heart of our adversarial system of justice. In this instance, however, we affirmatively endeavor to chill the kinds of abusive protraction of

13

litigation that are clearly beyond the outer limits of appropriate advocacy, as exemplified in the instant appeal of Collins II.

C.    Lack of Jurisdiction

Collins argues at great length that its appeal from the district court's decision was not frivolous because the appellate leave rule was supplanted by the Supreme Court's opinion in Standard Oil Co. v. United States, 429 U.S. 17 (1976), or that Collins at least had a reasonable basis for believing so.  We need waste little paper and ink on Collins' argument on this point.  The district court clearly and correctly explained in its opinion dismissing the tort suit that Standard Oil held only that:

> recall of an appellate mandate [is] not a prerequisite to relief for subsequently discovered fraud upon the district court where relief was sought under Fed. R. Civ. P. 60(b) in the same district court, because "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events."[13]

It is clear beyond cavil that the district court skewered this argument by Collins; to have appealed that holding was quintessential frivolousness.

In Collins I, AT&T argued its interpretation of the Granello Article in its appellate brief to the Federal Circuit.  The only reason proffered by Collins for failing to rebut AT&T's argument at this juncture is that Collins believed the Federal Circuit, for procedural reasons, could not reach the issue on appeal.  Stated

---

[13]    Memorandum Opinion entered May 11, 1995 (emphasis in original), quoting Standard Oil, 429 U.S. at 18.

simply, by making a tactical decision that included a calculated risk, Collins gambled and lost. As for Collins' efforts to recoup that loss by pursuing Collins II, the law is settled that a district court is without jurisdiction to alter the mandate of a circuit court on the basis of matters included or includable in a prior appeal.[14]

Collins' reading of Standard Oil is not only unreasonable; it is also lacking in bona fides. Sanctions would be appropriate in this case, however, even if the appellate leave rule had been abolished by Standard Oil, as Collins contends. On appeal Collins has not sought the right to bring a Rule 60 motion in district court without first obtaining appellate leave. On the contrary, Collins has clearly and consistently demonstrated that it wants no part of any Rule 60 motion. Collins filed its fraud-on-the-court action in a different federal district court than the one that had decided Collins I. In the Northern District of Texas, Collins went to great lengths to obfuscate the true nature of what it was doing when it filed and prosecuted Collins II in that court. Even when that ploy was unmasked and squelched by the court in Collins II, however, Collins nevertheless persisted in its vendetta, forging ahead with an appeal to this court in which Collins merely continued to belabor its defrocked fraud theory, hoping against

---

[14] Seese v. Volkswagenwerk, A.G., 679 F.2d 336, 337 (5th Cir. 1982); Eutectic Corp. v. Metco, Inc., 597 F.2d 32, 34 (5th Cir. 1979); Tapco Products Co. v. Van Mark Products Corp., 466 F.2d 109, 110 (6th Cir. 1972).

15

hope that it might finally reach a sympathetic —— or, more accurately, a gullible —— ear.

D.  <u>Subjective Good Faith - "The Lady Doth Protest Too Much, Methinks</u>."[15]

Collins attempts to bolster its position by arguing vaingloriously that it should not be subjected to sanctions given that its attorneys consulted with other disinterested attorneys to assure themselves of the viability of their claims and legal positions both before filing the tort suit and then again before appealing to this court.  Counsel for Collins collected and submitted affidavits from each of those other attorneys in an attempt to show that the former has acted in good faith throughout these proceedings.

As even the most sophisticated of modern diagnostic scanning and imaging devices do not let us probe the innermost thoughts of the brain, we have no palpable evidence to dispute Collins' self-serving insistence that it acted in subjective good faith.  Indeed, on rehearing, Collins continues sanctimoniously  to proclaim its subjective belief that its fraud claim is justified under the law.  But passion and zeal are not shields against the consequences that flow from behaving unreasonably or in <u>objective</u> bad faith.[16] Regardless of any amount of subjective good faith an appellant

---

[15]    William Shakespeare, <u>Hamlet</u>, act 3, sc. 2.

[16]    <u>See</u> <u>Dreis & Krump Mfg. Co. v. International Ass'n of Machinists</u>, 802 F.2d 247, 255 (7th Cir. 1986), <u>quoted with approval</u> in <u>Coghlan</u>, 852 F.2d at 809.

16

might profess, an appeal is frivolous if it is objectively unreasonable.[17] So, even if we were to credit the ostensible support that Collins' counsel drummed up from their brethren at the Bar through the affidavits filed herein — which we do not — those solicited testimonials gain counsel naught in the arena of objectivity.

## III

## CONCLUSION

Now that we have conducted the rehearing requested by Collins regarding the sanctions aspect of this case, we are more convinced than ever that the appeal in Collins II is sanctionably frivolous. Rule 38 sanctions for frivolous appeals may include single or double costs as well as attorneys' fees.[18] We have stated previously that "[e]ven greater sanctions may be imposed under

---

[17] See Coghlan, 852 F.2d at 813, quoting Brady v. Chemical Constr. Corp., 740 F.2d 195, 202 (2d Cir. 1984) ("[T]he Second Circuit has held that an honest belief in the merits of a claim, and the subjective feeling that a litigant has been denied a fair hearing, do not excuse an appellate brief that 'ignores significant issues and facts while deploying a smokescreen of irrelevant and tangential issues."); Id. at 809, quoting Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists, 802 F.2d 247, 255-56 (7th Cir. 1986) ("It is human nature to crave vindication of a passionately held position even if the position lacks an objectively reasonable basis in the law. Although we have no reason to believe that the company or its counsel was acting in bad faith, ... the company's briefs and oral argument failed to identify any arguable error in the district court's decision....").

[18] See, e.g., Coghlan, 852 F.2d at 812; McDougal v. Commissioner, 818 F.2d 453, 455 (5th Cir. 1987); Stelly, 761 F.2d at 1115; Wright v. Commissioner, 752 F.2d 1059, 1062 (1985); Knoblauch v. Commissioner, 752 F.2d 125, 128 n.4 (5th Cir.), cert. denied, 474 U.S. 830, 106 S. Ct. 95, 88 L.Ed.2d 78 (1985).

appropriate circumstances."[19]  In our original opinion we assessed sanctions against Collins in an amount equal to all costs of the appeal, including the reasonable attorneys' fees of its opponent. After the Petition for Rehearing in protest of those sanctions was filed, we implicitly gave Collins the opportunity to re-think its position, accept the sanctions initially imposed, and withdraw its Petition for Rehearing, thereby sparing AT&T and this court further unproductive expenditures of time, money, and resources.  But Collins was obviously not interested, obstinately pressing on with its vindicatory — and, we conclude, vindictive — crusade.

We can discern no justification, under the banner of vigorous advocacy or otherwise, for Collins' filing and prosecuting this unjustifiable appeal.  Such prolongation of the case left AT&T no real choice but to undertake additional efforts and expend additional costs in researching, preparing for, and participating in the appeal and the rehearing; and the time and resources of this court were further strained in the process. Collins' protestations to the contrary notwithstanding, we are left with the distinct impression that the appeal was not simply frivolous, but that it was filed and prosecuted vindictively, vexatiously, and for purposes of harassment as well.

We therefore amend our original imposition of sanctions against Collins by assessing them jointly and severally against

---

[19]  Stelly, 761 F.2d at 1115-1116.

Collins and its trial and appellate counsel herein (but not its additional Louisiana attorneys who were retained for purposes of this rehearing only) as requested by said counsel, and imposing sanctions in a sum equal to the costs of the instant appeal, including, without limitation, AT&T's reasonable attorneys' fees incurred in opposing Collins' appeal and participating in this sanctions rehearing. It is our conclusion that this is the lightest sanction that we can impose and still attain the results we seek to achieve. The amount we find to be AT&T's reasonable attorneys' fees and related costs —— which we now declare to be assessed under the aegis of FRAP 38 —— is $91,008.26. That sum, representing the entire sanction assessed herein, shall be paid into the registry of this court within thirty (30) days following the filing of this opinion, in delinquency of which said sum shall bear interest from the date of said filing until paid in full, at the rate of 10% per annum.

AMENDED, and, as amended, AFFIRMED.